TIMOTHY COURCHAINE
United States Attorney
District of Arizona
ARON KETCHEL
Assistant United States Attorney
Arizona State Bar No. 038421
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: aron.ketchel@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Shakia Michelle Rose,<br><br>Defendant. | No. CR-25-01188-PHX-SPL (ESW)<br><br>**INFORMATION**<br><br>VIO: 18 U.S.C. § 371<br>(Conspiracy)<br>Count 1 |

**THE UNITED STATES ATTORNEY'S OFFICE CHARGES:**

**INTRODUCTION**

1. At all times relevant to this Information, defendant SHAKIA ROSE conspired and schemed with others to prepare and submit false and fraudulent Paycheck Protection Program ("PPP") loan applications to various lending institutions, including Harvest Small Business Finance, LLC; BSD Capital, LLC, doing business as Lendistry; Capital Plus Financial, LLC; Benworth Capital; and Fountainhead SBF LLC, participating lenders helping to provide government-backed, emergency financial assistance to businesses suffering from the economic impact of the COVID-19 pandemic. Defendant submitted loan applications replete with false and fraudulent information, including false

income amounts. As a result of the fraud conspiracy, defendant personally received more than $40,000 in government-guaranteed loans and defendant conspired with others to obtain over $300,000 in government-guaranteed loans, which should have gone to real businesses that were harmed by the COVID-19 pandemic.

**SMALL BUSINESS ADMINISTRATION**

2.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided financial support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA facilitated loans through banks, credit unions, and other lenders. These loans had government-backed guarantees if certain requirements were met.

**PAYCHECK PROTECTION PROGRAM BACKGROUND**

3.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and was designed to provide emergency financial assistance to the millions of Americans suffering from the economic effects caused by the COVID-19 pandemic. One source of relief the CARES Act provided, through a program referred to as the Paycheck Protection Program ("PPP"), was authorization of up to $349 billion in potentially forgivable loans to small businesses for payroll, job retention, mortgage interest, rent/lease, utilities, and certain other applicable expenses.

4.      The first phase of the PPP loan process was implemented between March 2020 and March 31, 2021. PPP loans had an interest rate of one percent. Loans issued prior to June 5, 2020, had a maturity of two years, while loans issued after June 5, 2020, had a maturity of five years. Each loan draw had a specific application process and requirements. SBA would forgive PPP loans if all employee retention criteria were met, and the funds were used for eligible expenses within a designated period as set forth in the PPP.

**PPP LOAN APPLICATION PROCESS**

5. The SBA oversaw the entire PPP and fully guaranteed every legitimate PPP loan. The individual PPP loans, however, were issued by private, SBA-approved lenders who received and processed the PPP applications. Thus, the loans were made from the lenders' own funds.

6. To apply for a PPP loan, a qualifying business was required to submit a PPP loan application to a participating lender. The lender then transmitted the relevant data for processing the loan to the SBA. This included the borrower's information, the total amount of the loan, and the listed number of employees.

7. In the PPP loan application (SBA Form 2483-C), an individual claiming to operate a sole proprietorship had to verify the business's gross income and the purpose of the loan. The gross income figure was used to calculate the amount of money the business was eligible to receive under the PPP. The maximum PPP loan amount a sole proprietorship business could receive was 2.5 times the business's average gross monthly income costs, up to $20,833.

8. The PPP loan application required the applicant to make several affirmative certifications. Among them, the applicant was required to certify, in pertinent part, that each of the following statements were true:

> a. The Applicant was in operation on February 15, 2020, and was an eligible self-employed individual, independent contractor, or sole proprietorship with no employees;
>
> b. Current economic uncertainty makes this loan necessary to support the ongoing operations of the Applicant;
>
> c. The funds would be used to make mortgage interest payments, rent, utilities, covered operations expenditures, covered property damage costs, and covered supplier costs, as specified under the PPP Rules, and;

     d. The information provided in the application and information provided in all supporting documents and forms was true and accurate in all material respects.

### PPP LOAN FORGIVENESS APPLICATION PROCESS

9. Under the applicable PPP rules, the full principal of the PPP loan and any accrued interest was eligible for forgiveness if, during the 8-to-24-week period following loan disbursement, the applicant used the PPP loan on permissible business-related expenses. To apply for loan forgiveness for sole-proprietor loans, the borrower was required to complete a Loan Forgiveness Application (SBA Form 3508S) and submit it to its lender, or the lender that was servicing the PPP loan.

10. At any time up to the maturity date of the loan, a borrower could apply for loan forgiveness so long as all the loan proceeds for which the borrower was requesting forgiveness had been used.

11. If borrowers did not apply for forgiveness within ten months after the last day of the covered period, then PPP loan payments were no longer deferred, and borrowers were required to repay their loans to their PPP lender.

12. Like the PPP loan application, the PPP Loan Forgiveness Application required the applicant to make several affirmative certifications. Among them, the applicant was required to certify the following pertinent statements were true:

     a. The Borrower complied with all requirements in the PPP Rules, including rules related to eligible uses of PPP loan proceeds; and

     b. "The information provided in this application is true and correct in all material respects."

### FINANCIAL INSTITUTIONS AND PARTICIPATING PPP LENDERS

13. Harvest Small Business, LLC; BSD Capital, LLC, doing business as Lendistry; Capital Plus Financial, LLC; Benworth Capital; and Fountainhead SBF LLC, all participated in the SBA's PPP as lenders, and as such, were authorized to lend funds to eligible borrowers under the terms of the PPP.

# COUNT 1

## Conspiracy

### [18 U.S.C. § 371]

14. The factual allegations in the preceding paragraphs are incorporated by reference and re-alleged as though fully set forth herein.

15. Beginning in or about March 2021, and continuing through on or about February 2023, in the District of Arizona and elsewhere, defendant SHAKIA ROSE did conspire, confederate, and agree with others known to the U.S. Attorney's Office, to willfully and knowingly devise a scheme and artifice to defraud several financial institutions that were authorized to lend funds to eligible borrowers under the terms of the PPP, including Harvest Small Business Finance, LLC; BSD Capital, LLC, doing business as Lendistry; Capital Plus Financial, LLC; Benworth Capital; and Fountainhead SBF LLC, each participating lenders helping to provide government-backed, emergency financial assistance to businesses suffering from the economic impact of the Covid pandemic, and under the auspices of the United States Small Business Administration, by means of false and fraudulent pretenses, representation, and promises, including preparing and submitting false and fraudulent PPP loan applications in order to obtain approximately $351,237 in government-guaranteed loans through the Paycheck Protection Program (PPP).

**OBJECT OF THE CONSPIRACY**

16. It was the object of the conspiracy for defendant and her co-conspirators to commit wire fraud in violation of 18 U.S.C. § 1343, and transactional money laundering in violation of 18 U.S.C. § 1957.

**MANNER AND MEANS OF THE CONSPIRACY AND FRAUD SCHEMES**

17. The manner and means by which the defendant and her co-conspirators sought to accomplish the objectives of the conspiracy and fraud schemes included, among other things, the following:

    a. Submitting PPP loan applications containing false IRS Form 1040, Schedule Cs purporting to show that in 2019, multiple individuals operated sole

proprietorships in which they each earned over $100,000. In fact, these same individuals did not operate sole proprietorships but instead many were employed by the federal government or served as federal government contractors in 2019. Moreover, no such Schedule Cs were ever filed with the IRS on behalf of these individuals.

b. Defendant and her co-conspirators falsely claimed that these entities needed these PPP loans to support their ongoing operation and were operating in February 2020. In fact, at the time these applications were filed, none of the entities were operating in February 2020 in a manner that made them eligible for a PPP loan.

c. Defendant and her co-conspirators filed PPP forgiveness applications in which they sought forgiveness of the full amounts of the loans and attested that the PPP loans had been used for eligible purposes, including funding ongoing operations of the sole proprietorships.

d. After each PPP loan was funded and deposited, defendant and her co-conspirators used the funds for personal expenses and transferred funds between co-conspirators.

e. Defendant received payments from her co-conspirators after her co-conspirators received fraudulent PPP loans.

**OVERT ACTS**

18. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the District of Arizona, and elsewhere:

a. On or about March 16, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for herself that was submitted to Fountainhead SBF LLC. The application sought a loan in the amount of approximately $20,833. Among other things, the PPP application

included false representations about defendant's employment status and defendant's gross income from her business in 2019.

b. On or about April 5, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator J.M. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,437. Among other things, the PPP application included false representations about J.M.'s employment status and the gross income from J.M.'s business in 2019.

c. On or about April 12, 2021, after receiving her PPP loan, co-conspirator J.M. wrote a check in the amount of $20,437 to a business entity controlled by co-conspirators C.H. and A.F.

d. On or about April 5, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator C.H. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,833. Among other things, the PPP application included false representations about C.H.'s employment status and the gross income from C.H.'s business in 2019.

e. On or about April 5, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator A.F. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,806. Among other things, the PPP application included false representations about A.F.'s employment status and the gross income from A.F.'s business in 2019.

f. On or about April 9, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for co-conspirator C.H. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,833. Among other things, the PPP application included false representations about

C.H.'s employment status and the gross income from C.H.'s business in 2019.

g. On or about April 9, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for co-conspirator A.F. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,806. Among other things, the PPP application included false representations about A.F.'s employment status and the gross income from A.F.'s business in 2019.

h. On or about April 10, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

i. On or about April 10, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for co-conspirator J.M. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,437. Among other things, the PPP application included false representations about J.M.'s employment status and the gross income from J.M.'s business in 2019.

j. On or about April 27, 2021, after receiving her second PPP loan, co-conspirator J.M. wrote a check in the amount of $20,437 to a business entity controlled by co-conspirators C.H. and A.F.

k. On or about April 12, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for herself that was submitted to Fountainhead SBF LLC. The application sought a loan in the amount of approximately $20,833. Among other things, the PPP application included false representations about defendant's employment status and defendant's gross income from her business in 2019.

l. On or about April 14, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator

|   |   |
|---|---|
|   | L.T. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,697. Among other things, the PPP application included false representations about L.T.'s employment status and the gross income from L.T.'s business in 2019. |
| m. | On or about April 17, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F. |
| n. | On or about April 25, 2021, defendant received a check in the amount of $10,000 from co-conspirator A.F. |
| o. | On or about April 29, 2021, after receiving his PPP loan, co-conspirator L.T. wired $10,000 to a business entity controlled by co-conspirators C.H. and A.F. |
| p. | On or about April 15, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator J.D. that was submitted to Benworth Capital. The application sought a loan in the amount of approximately $20,445. Among other things, the PPP application included false representations about J.D.'s employment status and the gross income from J.D.'s business in 2019. |
| q. | On or about April 24, 2021, after receiving her PPP loan, co-conspirator J.D. wrote a check in the amount of $9,500 to co-conspirator A.F. |
| r. | On or about April 16, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator A.J. that was submitted to Benworth Capital. The application sought a loan in the amount of approximately $20,833. Among other things, the PPP application included false representations about A.J.'s employment status and the gross income from A.J.'s business in 2019. |

s. On or about April 26, 2021, after receiving her PPP loan, co-conspirator A.J. made an electronic payment in the amount of $10,000 to a bank account jointly controlled by co-conspirators C.H. and A.F.

t. On or about April 17, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for co-conspirator L.T. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,697. Among other things, the PPP application included false representations about L.T.'s employment status and the gross income from L.T.'s business in 2019.

u. On or about May 21, 2021, after receiving his second PPP loan, co-conspirator L.T. wired $10,000 to a bank account jointly controlled by co-conspirators C.H. and A.F.

v. On or about April 20, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator A.H. that was submitted to Benworth Capital. The application sought a loan in the amount of approximately $20,472. Among other things, the PPP application included false representations about A.H.'s employment status and the gross income from A.H.'s business in 2019.

w. On or about May 3, 2021, after A.H. received her PPP loan, co-conspirator A.H. wired $10,000 to a business entity controlled by co-conspirators C.H. and A.F.

x. On or about April 27, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator P.H. that was submitted to Harvest Small Business Finance, LLC. The application sought a loan in the amount of approximately $20,485. Among other things, the PPP application included false representations about P.H.'s employment status and the gross income from P.H.'s business in 2019.

y. On or about May 12, 2021, after P.H. received his PPP loan, co-conspirator P.H. wired $10,000 to a bank account jointly controlled by co-conspirators C.H. and A.F.

z. On or about May 3, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

aa. On or about May 13, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

bb. On or about May 20, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for co-conspirator A.H. that was submitted to BSD Capital, LLC dba Lendistry. The application sought a loan in the amount of approximately $20,472. Among other things, the PPP application included false representations about A.H.'s employment status and the gross income from A.H.'s business in 2019.

cc. On or about June 8, 2021, after receiving her second PPP loan, co-conspirator A.H. wired $9,980 to a business entity controlled by co-conspirators C.H. and A.F.

dd. On or about May 22, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

ee. On or about May 28, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a second fraudulent PPP application for co-conspirator P.H. that was submitted to BSD Capital, LLC, doing business as Lendistry. The application sought a loan in the amount of approximately $20,485. Among other things, the PPP application included false representations about P.H.'s employment status and the gross income from P.H.'s business in 2019.

ff. On or about July 7, 2021, after receiving his second PPP loan, co-conspirator P.H. wired $9,980 to a bank account jointly controlled by co-conspirators C.H. and A.F.

gg. On or about May 29, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

hh. On or about June 6, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

ii. On or about June 11, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP application for co-conspirator A.J. that was submitted to Capital Plus Financial, LLC. The application sought a loan in the amount of approximately $20,833. Among other things, the PPP application included false representations about A.J.'s employment status and the gross income from A.J.'s business in 2019.

jj. On or about June 15, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

kk. On or about June 24, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

ll. On or about July 7, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

mm. On or about July 15, 2021, defendant received a payment through Venmo in the amount of $2,500 from a bank account controlled by co-conspirators C.H. and A.F.

nn. On or about August 28, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application related to defendant's PPP loan submitted on or about March 16, 2021. In the Loan Forgiveness Application, defendant falsely attested that she complied with the PPP Rules.

oo. On or about September 3, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator C.H. related to C.H.'s PPP loan submitted on or about April 5, 2021. The Loan Forgiveness Application falsely stated that that C.H. complied with the PPP Rules.

pp. On or about September 3, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator A.F. related to A.F.'s PPP loan submitted on or about April 5, 2021. The Loan Forgiveness Application falsely stated that that A.F. complied with the PPP Rules.

qq. On or about September 6, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator J.M. related to J.M.'s PPP loan submitted on or about April 5, 2021. The Loan Forgiveness Application falsely stated that that J.M. complied with the PPP Rules.

rr. On or about September 6, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator A.H. related to A.H.'s PPP loan submitted on or about April 20, 2021. The Loan Forgiveness Application falsely stated that that A.H. complied with the PPP Rules.

ss. On or about September 6, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator L.T. related to L.T.'s PPP loan submitted on

or about April 14, 2021. The Loan Forgiveness Application falsely stated that that LT. complied with the PPP Rules.

tt. On or about September 6, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator J.D. related to J.D.'s PPP loan submitted on or about April 15, 2021. The Loan Forgiveness Application falsely stated that that J.D. complied with the PPP Rules.

uu. On or about September 11, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator P.H. related to P.H.'s PPP loan submitted on or about April 27, 2021. The Loan Forgiveness Application falsely stated that that P.H. complied with the PPP Rules.

vv. On or about September 12, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator A.J. related to A.J.'s PPP loan submitted on or about April 16, 2021. The Loan Forgiveness Application falsely stated that that A.J. complied with the PPP Rules.

ww. On or about September 29, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator J.M. related to J.M.'s PPP loan submitted on or about April 10, 2021. The Loan Forgiveness Application falsely stated that that J.M. complied with the PPP Rules.

xx. On or about September 29, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator P.H. related to P.H.'s PPP loan submitted on or about May 28, 2021. The Loan Forgiveness Application falsely stated that that P.H. complied with the PPP Rules.

yy. On or about September 29, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator L.T. related to L.T.'s PPP loan submitted on or about April 17, 2021. The Loan Forgiveness Application falsely stated that that L.T. complied with the PPP Rules.

zz. On or about September 29, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application related to defendant's PPP loan submitted on or about April 12, 2021. In the Loan Forgiveness Application, defendant falsely attested that she complied with the PPP Rules.

aaa. On or about October 9, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator C.H. related to C.H.'s PPP loan submitted on or about April 9, 2021. The Loan Forgiveness Application falsely stated that that C.H. complied with the PPP Rules.

bbb. On or about October 9, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator A.F. related to A.F.'s PPP loan submitted on or about April 9, 2021. The Loan Forgiveness Application falsely stated that that A.F. complied with the PPP Rules.

ccc. On or about December 10, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator A.H. related to A.H.'s PPP loan submitted on or about May 20, 2021. The Loan Forgiveness Application falsely stated that that A.H. complied with the PPP Rules.

ddd. On or about December 10, 2021, defendant prepared and submitted, or caused to be prepared and submitted, a fraudulent PPP Loan Forgiveness Application for co-conspirator A.J. related to A.J.'s PPP loan submitted on

or about June 11, 2021. The Loan Forgiveness Application falsely stated that that A.J. complied with the PPP Rules.

All in violation of Title 18, United States Code, Section 371.

Dated this 26th day of August, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*Digitally signed by ARON KETCHEL*
*Date: 2025.08.26 09:55:54 -07'00'*

ARON KETCHEL
Assistant U.S. Attorney